CHEMICAL SPECIALTIES CO., INC. *v.* UNITED STATES (No. 4856)[1]

---

[1] C. A. D. 614.

United States Court of Customs and Patent Appeals, May 15, 1956

Richard G. Green and Leon Simon for appellant.

Warren E. Burger, Assistant Attorney General, Richard E. FitzGibbon, Chief, Customs Section (Murray Sklaroff, trial attorney, of counsel), for the United States.

Brooks & Brooks (J. Joseph McDermott of counsel) amicus curiae.

[Oral argument April 10, 1956, by Mr. Green and Mr. FitzGibbon]

Before JOHNSON, Acting Chief Judge, and WORLEY, COLE, and JACKSON (retired), Associate Judges

JOHNSON, Acting Chief Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, entered pursuant to its decision, C. D. 1698, overruling the protest filed by appellant against the rate of duty applied by the Collector of Customs on an importation of 21-acetoxy pregnenolone.

The Collector of Customs classified the imported merchandise for duty under the provisions of paragraph 5 of the Tariff Act of 1930 as a medicinal preparation, artificially obtained and not specially provided for, at the rate of 25 per centum ad valorem. This paragraph reads as follows:

Par. 5: All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

The appellant claimed in his protest that the imported merchandise should have been classified directly under paragraph 34 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as a drug advanced in condition, or alternatively

under said paragraph by virtue of the similitude provision of paragraph 1559 of the Tariff Act of 1930, at the rate of 5 per centum ad valorem. The pertinent portions of these paragraphs read as follow:

Par. 34. *Drugs*, such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, herbs, leaves, lichens, mosses, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and all other drugs of vegetable or animal origin (except halibut-liver oil); any of the foregoing which are *natural* and *uncompounded drugs* and not edible, and not specially provided for, but which are *advanced* in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture, and not containing alcohol _____ 5% ad val. [Italics added.]

*Provided*, That the term "drug" wherever used in this Act shall include only those substances having therapeutic or medicinal properties and chiefly used for medicinal purposes: * * *

Par. 1559. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; * * *

It was stipulated by counsel that the imported 21-acetoxy pregnenolone is produced by a series of chemical steps from a yam commonly known as the "cabeza de negra," and that these steps culminate in the production of 21-hydroxy pregnenolone. It was further stipulated that the 21-hydroxy pregnenolone is acetylated with acetic anhydride thus forming 21-acetoxy pregnenolone. It was also stipulated that the imported material is not edible, is not specially provided for by name, and does not contain alcohol.

In the proceedings before the Customs Court, one witness appeared in behalf of appellant and three witnesses in behalf of the appellee. Appellant's witness, a director of research, testified that he had found 21-hydroxy pregnenolone in human blood taken from a blood bank, in the synovial fluid taken from a human patient with arthritis, in blood taken from a vein leading from the adrenal gland of a human patient, and in human urine. He further testified that both 21-acetoxy pregnenolone, the imported merchandise, and 21-hydroxy pregnenolone were drugs, the former being an advanced form of the latter, and that he had used both of the aforementioned substances experimentally.

Appellee's witnesses testified that 21-acetoxy pregnenolone is a product that has been artificially produced and is not a natural product; that it is produced as a result of a chemical process, and that this process is a "compounding."

As noted above, appellant contends that the imported 21-acetoxy pregnenolone should have been classified under paragraph 34, *supra*. Appellant urges that the imported substance is a "natural and un-

compounded drug," and is "advanced in condition," thus meeting the requirements of paragraph 34, *supra.*

Appellant's reasoning in the foregoing respects appears to be that 21-hydroxy pregnenolone is found in nature, as indicated by the above-discussed testimony; that the imported merchandise, 21-acetoxy pregnenolone, has the same functional characteristics as 21-hydroxy pregnenolone, the substance which is found in nature; and since 21-acetoxy pregnenolone is obtained by acetylating 21-hydroxy pregnenolone (which is found in nature but not in the source from which the imported merchandise is obtained), it is an advanced form of a substance found in nature, and therefore should be classified within paragraph 34, *supra.*

On the other hand, appellee urges that the imported merchandise is not "natural," and is "compounded." Appellee further contends that the imported merchandise is not an "advanced" condition of a crude drug because the imported merchandise never existed as such in the crude drug, but was manufactured therefrom by chemical processes.

The Customs Court held that the imported 21-acetoxy pregnenolone is not a "natural" drug within the meaning of paragraph 34, *supra;* that the imported merchandise is not uncompounded; and that the imported merchandise is not an advancement of its predecessor material but is in itself a distinct chemical entity since the source material, the cabeza de negra, is completely destroyed and its identity lost. The Customs Court also rejected appellant's contention that classification of the 21-acetoxy pregnenolone should have been made by similitude notwithstanding that the testimony showed it to have the same biological effect as 21-hydroxy pregnenolone, a substance which is found in nature. The court further rejected appellant's contention that long continued administrative practice required classification of the imported merchandise under paragraph 34, *supra.* Accordingly, the Customs Court sustained the collector's classification.

The first question before us on appeal is whether the imported 21-acetoxy pregnenolone is a drug which is "natural," "uncompounded," and "advanced" in value or condition within the meaning of paragraph 34, *supra.* The second question is whether the similitude provision is applicable to the present case. The third question is whether there is such long continued administrative practice which requires classification of the imported material under paragraph 34, *supra.*

In order to answer the above-noted first question, we must analyze the facts of the present case in the light of the wording of paragraph 34, *supra.* It is to be noted that this paragraph relates to "drugs." While the imported 21-acetoxy pregnenolone is conceded to be a drug,

it is to be noted that appellant urges that it is an advanced form of 21-hydroxy pregnenolone. However, paragraph 34, *supra*, specifies that the imported drug must be an advanced form of "natural and uncompounded drugs." The definition of a drug in paragraph 34, *supra*, is that a "* * drug * * shall include only those substances having therapeutic or medicinal properties and chiefly used for medicinal purposes: * *". The testimony on behalf of appellant indicates that the 21-hydroxy pregnenolone was used only *experimentally*. However, it has been held that while the use of a substance experimentally may indicate medicinal or therapeutic properties, this use does not prove its *therapeutic properties* or its *chief use as a medicinal, E. F. Drew & Co.* v. *United States*, 41 C. C. P. A. (Customs) 101, C. A. D. 536, both of the last-mentioned characteristics being essential for a substance to be classified as a drug under paragraph 34, *supra*, *Van Gelder-Fanto Corp.* v. *United States*, 41 C. C. P. A. (Customs) 90, C. A. D. 534. Thus in the present case since appellant has not shown that the 21-hydroxy pregnenolone is a "drug," we cannot see how the imported 21-acetoxy pregnenolone is an advanced form of a "drug," as this term is used in paragraph 34, *supra*.

It is to be further noted that paragraph 34, *supra*, recites that the imported drug must be "natural." As stated above, appellant's theory in urging that the imported 21-acetoxy pregnenolone meets this requirement is because it is an advanced form of and has the same characteristics as the naturally occurring substance 21-hydroxy pregnenolone. While the imported 21-acetoxy pregnenolone is ultimately produced from the cabeza de negra yam by a chemical process, neither the 21-acetoxy pregnenolone nor the 21-hydroxy pregnenolone is found as such in the cabeza de negra. A logical reading of the statute indicates to us that the "drug" which is imported must in itself be "natural," and it is not within the meaning of the statute to consider the imported material as being natural because a similar material exists elsewhere in nature. In other words, there seems to be no logical connection, relative to paragraph 34, *supra*, between the fact that 21-hydroxy pregnenolone exists in nature and that this same substance is produced at an intermediate stage during the process of manufacturing 21-acetoxy pregnenolone from the cabeza de negra. We accordingly are of the opinion that 21-acetoxy pregnenolone did not exist as a "natural" drug in the cabeza de negra and therefore does not fall within paragraph 34, *supra*, as a "natural" drug.

Appellant urges that the imported 21-acetoxy pregnenolone is "uncompounded" within the meaning of paragraph 34, *supra*. If it were found in a natural state and thus imported, this would be true. However, as noted above, the imported 21-acetoxy pregnenolone is obtained from the cabeza de negra by a chemical process, and the

imported merchandise does not exist as such in the cabeza de negra. It appears that the term "uncompounded" as used in paragraph 34, *supra*, has never been judicially defined by this court. However, in *Kachurin Drug Company* v. *United States*, 24 Cust. Ct. 264, C. D. 1246, *aff'd* 39 C. C. P. A. (Customs) 36, C. A. D. 459, it was held that a substance which had been produced from another substance by chemical reaction was "compounded." We did not treat this question on appeal. However, the term "chemical compound" has been held to be a chemical combination of substances which results in the destruction of the original substances as distinct entities and develops by chemical reaction a new substance possessing radically different properties. *Strohmeyer & Arpe Co.* v. *United States*, 2 Ct. Cust. Appls. 285, T. D. 32035. Since the imported 21-acetoxy pregnenolone did not exist in the cabeza de negra, but was synthesized therefrom by a series of chemical reactions, it is our opinion that the imported 21-acetoxy pregnenolone is compounded rather than "uncompounded," and therefore does not come within the meaning of paragraph 34, *supra*.

It is also urged by appellant that the 21-acetoxy pregnenolone meets the meaning of the term "advanced" as it is used in the statute because "the advancement contemplated by the statute is an elaborate advancement." It also appears from appellant's brief that it is contended that "advanced" includes chemical reactions. There seem to be no pertinent cases which have specifically defined the term "advanced" as it appears in paragraph 34, *supra*. It is to be noted that paragraph 34, *supra*, recites "* * * advanced in value or condition by shredding, grinding, chipping, crushing, or any other processes or treatment whatever * * *." However, it appears that this portion of the statute has been judicially construed to include, in addition to the enumerated processes, the extraction of a drug with solvents, *Sherka Chemical Co., Inc.* v. *United States*, 33 C. C. P. A. (Customs) 53, C. A. D. 316, and concentration of a drug, *Roche-Organon, Inc.* v. *United States*, 35 C. C. P. A. (Customs) 99, C. A. D. 378. However, we know of no case which has gone so far as to include chemical changes within the meaning of the above-quoted phrase, and we are of the opinion that the chemical change involved in the present case is not included in the meaning of "advanced" as it appears in paragraph 34, *supra*.

Cases involving the question of whether a substance should be classified under paragraph 34, *supra*, rather than paragraph 5, *supra*, have been before us previously. There is one idea present in these cases, namely, that a basic criterion for an imported substance to be classified under paragraph 34, *supra*, is that it must have existed as such in the source from which it was obtained regardless of the manner in which it was extracted. See *Roche-Organon, Inc.* v. *United States,*

*supra*, and *Sherka Chemical Co., Inc.* v. *United States, supra.* This criterion is not satisfied in the present case.

We are therefore of the opinion that the imported 21-acetoxy pregnenolone is not "natural," "uncompounded," or "advanced" within the meaning of paragraph 34, *supra,* and therefore does not properly fall under this paragraph. We are also of the opinion that since the imported substance did not exist in the source material from which it was synthesized, it does not properly fall within paragraph 34, *supra.*

Appellant further contends that if the imported material does not fall under paragraph 34, *supra,* directly, then it should be subject to the rate of duty provided in paragraph 34, *supra,* by virtue of the similitude provision of paragraph 1559, *supra,* since the imported material has the same type of action as 21-hydroxy pregnenolone. However, as we have discussed above, there has been no showing that 21-hydroxy pregnenolone is a drug within the meaning of paragraph 34, *supra,* since the only use to which it has been put is experimental use, that is, it has not been shown that 21-hydroxy pregnenolone is chiefly used as a medicinal and that it has therapeutic properties. Thus, since there has been no showing that 21-hydroxy pregnenolone falls within paragraph 34, *supra,* it follows that there could have been no showing that the allegedly similar substance 21-acetoxy pregnenolone should fall under that paragraph by similitude.

There is one other contention made by appellant, namely, that long continued administrative practice and judicial construction require a classification of the imported 21-acetoxy pregnenolone as a drug advanced under paragraph 34, *supra.* In this respect, appellant has named a long list of drugs which have been classified under paragraph 34, *supra.* However, the imported 21-acetoxy pregnenolone does not appear in this list. The fact that other drugs have been classified under paragraph 34, *supra,* is no basis for classifying the imported 21-acetoxy pregnenolone under this paragraph since there has been no showing of long and continued administrative practice and judicial construction relative to this particular substance.

It is to be further noted in the foregoing respect that while appellant has listed a number of drugs, there has been no showing that these drugs are produced in a manner analogous to the imported 21-acetoxy pregnenolone. Appellant relies on many Customs Court decisions and on our decision in *Roche-Organon, Inc.* v. *United States, supra,* to support its claim of long continued previous judicial construction. However, certain of these cases are inapposite since it appears that the imported substances existed as such in the material from which they were obtained, and were not, as here, synthesized from a source not originally containing the imported substance. See *Roche-Organon, Inc.* v. *United States, supra,* at page 111. Other of the cited

cases are inapposite in that they involved questions and substances which were different from those in the present case, and are therefore of no value in the present case. Thus, in our opinion, appellant has not made a satisfactory showing of long continued administrative practice and judicial construction which would require the classification of the imported 21-acetoxy pregnenolone under paragraph 34, *supra*.

For the foregoing reasons, the judgment of the Customs Court is *affirmed*.

JACKSON, Judge, retired, recalled to participate.

O'CONNELL, J., because of illness, did not participate in the hearing or decision of this case.